George **MARTIN, for himself and in behalf of his minor children, Ellen and Catherine Martin, et al., Appellants,**

v.

**CHARLOTTE–MECKLENBURG BOARD OF EDUCATION, et al., Appellee.**

No. 79–1586.

United States Court of Appeals, Fourth Circuit.

Argued May 5, 1980.

Decided July 23, 1980.

Whiteford S. Blakeney, Charlotte, N. C. (Blakeney, Alexander & Machen, Charlotte, N. C., on brief), for appellants.

William W. Sturges, Charlotte, N. C. (Hugh B. Campbell, Jr., Weinstein, Sturges, Odom, Bigger, Jonas & Campbell, P. A., Charlotte, N. C., on brief), and Julius L. Chambers, Charlotte, N. C. (Karl Adkins, Chambers, Stein, Ferguson & Becton, P. A., Charlotte, N. C., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and BUTZNER and PHILLIPS, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

Plaintiffs brought this suit for themselves and their children, students in the Charlotte-Mecklenburg school system, seeking to enjoin the Board of Education from implementing the Board's 1978 pupil reassignment plan. The district court denied plaintiffs' prayer for a temporary restraining order and an injunction, and this appeal followed. Concluding that the 1978 assignment plan is within the Board's plenary powers over educational policy, we affirm.

I

In *Swann v. Charlotte-Mecklenburg Board of Education*, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971), the Supreme Court upheld a series of orders by the district court designed to implement desegregation of the Charlotte-Mecklenburg school system. In 1974 the School Board and a citizens group submitted a proposal for student reassignment to the district court. The proposed assignments were intended to result in no school with a majority of minority students (with one exception), and the proposal called for review and adjustment of pupil assignments every third year. The district court adopted the joint proposal and in 1975 removed the case from the active docket noting that existing orders continued in full force and effect. In 1978 the Board reviewed pupil assignments and reassigned 2,050 white and 2,775 black students out of approximately 78,000 students in the system. Plaintiffs sought to enjoin implementation of the 1978 plan on the theory that reassignments made to achieve a particular racial ratio violated their right to equal protection under the fourteenth amendment. Plaintiffs argued below that *Brown v. Board of Education*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) (*Brown I*); 349 U.S. 294, 75 S.Ct. 752, 99 L.Ed. 1083 (1955), mandates that assignments to schools be made on a nonracial basis and that under *Pasadena City Board of Education v. Spangler*, 427 U.S. 424, 96 S.Ct. 2697, 49 L.Ed.2d 599 (1976), the 1978 plan was invalid because a racially neutral attend-

ance pattern was achieved in 1974. The district court held that a racially neutral attendance pattern had never been achieved and that certain of defendant's policies, including construction and school closing decisions, and a transfer procedure that was inadequately monitored, contributed to segregation. In the alternative the district court held that the Board's decision to adopt the 1978 plan was reached independently and without regard to court intervention and constituted a valid exercise of the Board's power over educational policy.

## II

■ When an unconstitutionally segregated school system prohibited under *Brown I* exists, the school authorities are under an affirmative obligation to dismantle the dual system. If the school authorities default in their obligation, the "district court has broad power to fashion a remedy that will assure a unitary school system." *Swann v. Charlotte-Mecklenburg Board of Education*, 402 U.S. at 16, 91 S.Ct. at 1267. When the system achieves compliance with *Brown I*, further judicial supervision over the school system is unnecessary unless school authorities deliberately attempt to segregate the schools by altering attendance patterns. *Id.* at 31–32, 91 S.Ct. at 1283, 1284. The school system in *Pasadena* was found to be unconstitutionally segregated in 1970, and the district court enjoined the school board to assign students in such a manner that no school would have a majority of minority students. The board complied with the order and reassigned students to achieve racial balance. In 1974 the school board sought relief from the requirement that no school have a majority of minority students, but the district court refused to modify its injunction. The Supreme Court reversed and held that *Swann* limited judicial remedial power to cases in which the school authorities have caused segregation. 427 U.S. at 434, 96 S.Ct. at 2703. In *Pasadena* there was no showing that the post-1970 changes in the racial composition of the schools were caused by the Board's actions. After racial neutrality in attendance patterns was achieved in 1970, the district court could not require yearly adjustment of student assignments to ensure racial balance. *Id.* at 435–37, 96 S.Ct. at 2704–2705. The school board was, therefore, entitled to relief from the injunction to the extent that the order required alteration of attendance zones. *Id.* at 440, 96 S.Ct. at 2706.

■ Plaintiffs urge on this appeal that *Pasadena* prohibits the reassignment made in 1978. We conclude, however, that *Pasadena* is inapposite. The maintenance of the 50% limitation on minority assignments was admittedly a large factor in the Board's decision to reassign students in 1978. The 50% requirement is embodied in the joint proposal adopted by the district court in 1974, but the Board independently decided in 1978 to adhere to its commitment under the 1974 proposal. The district court did not intervene to coerce the reassignments, and the Board did not seek to be relieved of any outstanding order of the district court.

For these reasons *Pasadena* is inapplicable, and the validity of the Board's decision to reassign students in order to maintain racial ratios must be evaluated under principles enunciated in *Swann*. The School Board is vested with broad discretionary powers over educational policy and is well within its powers when it decides that as a matter of policy schools should not have a majority of minority students. *See Swann v. Charlotte-Mecklenburg Board of Education*, 402 U.S. at 16, 91 S.Ct. at 1276. The assignments made in 1978 were well within the plenary powers of the Board.

Because we conclude that the 1978 assignment plan was a valid exercise of the Board's powers, we do not address the alternate holding relied on by the district court. The judgment of the district court is affirmed.

*AFFIRMED.*