FILED: May 8, 2000

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

TERRY BELK; DWAYNE COLLINS, on
behalf of themselves and the class
they represent,
Plaintiffs-Appellants,

WILLIAM CAPACCHIONE, Individually
and on behalf of Christina
Capacchione, a minor; MICHAEL P.
GRANT; RICHARD EASTERLING;
LAWRENCE GAUVREAU; KAREN
BENTLEY; CHARLES THOMPSON; SCOTT
C. WILLARD,
Plaintiffs-Appellees,

No. 99-2389(L)

v.

THE CHARLOTTE-MECKLENBURG
BOARD OF EDUCATION; ERIC SMITH,
Superintendent, in his official
capacity; ARTHUR GRIFFIN, Chairman
of the Charlotte-Mecklenburg
School Board, in his official
capacity,
Defendants.

UNITED STATES OF AMERICA,
Amicus Curiae.

_____

**ORDER**

Plaintiffs-appellees filed a petition for an initial hearing en banc. A
member of the court requested a poll on whether this case should be

heard initially en banc. A majority of the judges in active service voted that it should not be heard initially en banc.

Chief Judge Wilkinson and Judges Widener, Murnaghan, Niemeyer, Michael, Motz, Traxler, and King voted to deny initial en banc hearing. Judges Wilkins, Luttig, and Williams voted to grant initial en banc hearing.

Chief Judge Wilkinson filed an opinion concurring in the denial of an initial hearing en banc. Judge Luttig filed an opinion dissenting from denial of hearing en banc.

The petition for initial hearing en banc is hereby denied. Entered at the direction of Chief Judge Wilkinson for the court.

WILKINSON, Chief Judge, concurring in the denial of an initial hearing en banc:

Before us is a preliminary procedural motion. I regret the need for this debate, but I think it is important to respond briefly to my brother's dissenting statement. The question is simply whether this case should be heard initially by the Fourth Circuit en banc or by a three-judge panel. I am pleased that the court has decided to handle this case procedurally in the manner that we customarily handle our other cases and refer it to a three-judge panel in the first instance. In voting to pursue that course, I express a commitment to the orderly and customary procedures of this court. I express no view whatsoever on the merits of the underlying action.

The Fourth Circuit refers cases initially to three-judge panels for good reason. Congress has decided that the basic unit for hearing an appeal from the judgment of the district court is a panel of three. See 28 U.S.C. § 46 (1994 & Supp. III 1997) (authorizing three-judge panels as the ordinary manner of proceeding for courts of appeals). Panel decisions refine, narrow, and focus issues before the court. In the vast majority of cases, panel decisions are the end of the matter. Panel decisions hold out the prospect of finality and repose every bit as much as en banc decisions do. Quite often the work of the panel renders an en banc decision unnecessary.

2

In cases too numerous to mention, we have rejected the request of litigants for an initial hearing en banc. An en banc proceeding has proven no guarantee of a brief or clean resolution of all the issues in a case. Just as at the Supreme Court level, a court of nine or more (in our case eleven) has the potential for producing splintered decisions. That potential is magnified when there has been no prior panel consideration of a case. Hearing the case for the first time en banc would be like the Supreme Court bypassing the winnowing function of the court of appeals, which it routinely refuses to do.

No one can say at this point whether or not en banc review will occur. My dissenting brother urges that we bypass the three-judge panel altogether because that panel previously ruled on a stay motion in this case. In doing so, he states his opinion that the appellants and the public are "entitled to the presumption that the [appellants] will ultimately prevail" before the hearing panel. He also announces his belief that "the panel, presumptively only but presumptively no less, will invalidate" the district court's dissolution of the desegregation decree and the district court's injunction. My dissenting colleague thus seems to say that the three-judge panel's disposition is all but foreordained and that we should remove the case from its hands instanter.

With all respect for my fine colleague, I believe this would be an inappropriate course of action. The stay order made only the briefest and most fleeting reference to the merits. It is clear from the order that the panel was predominantly concerned with the balance of hardships involved in this case. The panel stated at the outset of its analysis that "[i]rreparable harm to the party seeking the stay and harm to the opponent of the stay are the most important factors" in deciding whether to grant the stay motion. The panel stated that, having concluded that the balance of hardships favored the appellants, the burden of showing likelihood of success on the merits correspondingly diminished and the appellants "need only show grave or serious questions for litigation." Without any elaboration of the merits, the panel then concluded that this element had been met.

Regardless of one's view of the stay order, it does not afford a basis for taking the decision out of the panel's hands. I am certain that all of us would be reluctant to prejudge how any of our colleagues on

3

the court will adjudicate a case. We have long urged that the public resist a predetermined view of the judicial function-- the notion that certain judges invariably resolve certain cases in certain ways. If we wish the public to resist this view of us, we must surely first resist this view of ourselves.

The panel in this case has not had the benefit of briefing or oral argument. The judges have not been able to discuss among themselves the insights that briefing and argument invariably provide. They have not been able to craft an opinion and receive the benefit of their colleagues' views upon the same. In short, the panel has not been able to do any of the things that make judging a truly deliberative act. I sincerely doubt that the panel knows at this point what the outcome of its deliberations will be. But I am prepared to say that, whatever the outcome, it will represent the conscientious and dedicated efforts of three esteemed judges.

I am aware that it is desirable to resolve all litigation as promptly as possible. School desegregation cases in particular exact a heavy toll upon a community, as parents and students, teachers and administrators all desire a stable environment in which the primary business of education can move forward. My brother Luttig makes the good point that indeterminacy is in no one's best interest. Legal procedures do, of course, provide for flexibility and expedition -- but not when expedition would sacrifice the orderly course of judicial deliberation and when the consequences of bypassing our customary procedures are uncertain in their own right.

My dissenting colleague posits all sorts of hypothetical scenarios concerning the subsequent timetable of events. These hypotheticals, however, rest on a long chain of assumptions which may or may not occur, and they fail to take account of the fact that our customary route of proceeding may turn out to be the more efficient. None of us really possesses the ability to look so far into the future when so many independent factors, including the choices of the litigants themselves, cannot be foretold. We should therefore not engage in so speculative an endeavor at this stage.

Early on, when we were a smaller court, we resolved a number of school desegregation cases initially en banc. However, this practice

4

has long since ceased. Since 1975, every school desegregation/pupil assignment appeal in this circuit has been decided initially by a three-judge panel. See Wheeler v. Durham County Bd. of Educ., 521 F.2d 1136 (4th Cir. 1975); Martin v. Charlotte-Mecklenburg Bd. of Educ., 626 F.2d 1165 (4th Cir. 1980); Goldsboro City Bd. of Educ. v. Wayne County Bd. of Educ., 745 F.2d 324 (4th Cir. 1984); Vaughns v. Board of Educ., 758 F.2d 983 (4th Cir. 1985); Riddick v. School Bd., 784 F.2d 521 (4th Cir. 1986); School Bd. v. Baliles , 829 F.2d 1308 (4th Cir. 1987); United States v. Charleston County Sch. Dist., 960 F.2d 1227 (4th Cir. 1992); Stone v. Prince George's County Bd. of Educ., 977 F.2d 574 (4th Cir. 1992) (unpublished table decision); Tuttle v. Arlington County Sch. Bd., 195 F.3d 698 (4th Cir. 1999) (per curiam); Eisenberg v. Montgomery County Pub. Sch., 197 F.3d 123 (4th Cir. 1999). There is no reason to disturb this practice of referring these cases to panels in the first instance.

This is a case that arouses keen interest. It is my belief that courts should respond to that circumstance in a calm, orderly, and delibera-tive fashion in accordance with the best traditions of the law. Judicial orders warrant the utmost respect when they are perceived by the pub-lic to have been reached in the most regular and careful manner. This observance of process is, I think, fundamental to the rule of law, just as a legally sound decision on the merits is. Indeed, the one abets the other, and that argues for not attempting to resolve what is a sensitive case in a procedurally atypical way. I therefore concur in the denial of the petition for an initial en banc hearing.

LUTTIG, Circuit Judge, dissenting from denial of hearing en banc:

Typically, of course, a case is first heard by a panel of the court and then is followed by en banc consideration if the court concludes that such is justified. However, I would reluctantly grant the plaintiffs appellees' motion for initial hearing en banc  in this particular case, not because of the importance of the case alone-- although that alone would be sufficient -- but, rather, because of what I believe will be the unintended effect of the combination of the unusual stay entered by the panel; the protracted period of time that now will lapse before the case can receive consideration by the full court; and the unavoid-able implementation period that will follow upon any decision of the full court. The likely effect of this combination of circumstances and

5

events will be, in my judgment, that the district court's decision will remain without effect for the balance of this academic year, the entire 2000-2001 academic year, the entire 2001-2002 academic year, and possibly even some portion, if not all, of the 2002-2003 academic year. In a case of this magnitude, where the district court has held that after thirty-five years of federal court supervision the jurisdiction's school system is, and has been for over twenty years, unitary and fully integrated, but where the massive bussing of school children continues and there remain classroom seats literally unfilled because of the assignment of students on the basis of race authorized now by this court, I believe that we have an obligation to act more expeditiously to decide whether the district court's injunction was in error or not.

I come to the conclusion that we should hear this case en banc, not, of course, for the reason that Judge Wilkinson ascribes to me in hyperbole, see ante at 3 (stating that I "urge[ ] that we bypass the three-judge panel altogether because that panel previously ruled on a stay motion in this case"), but, rather, for the following reasons. The district court's injunction to the Charlotte-Mecklenburg Board of Education required nothing of the Board during the current academic year; rather, appreciating the legitimate needs for avoidance of disruption and for implementation, the district court did not order compliance until the 2000-2001 academic year -- that is, until this coming September. Thus, given that the district court entered its order on September 9, 1999, the Board was provided approximately a full year to implement the district court's order. And the school system testified, through its superintendent, that full and timely compliance with the district court's injunction was indeed possible. Although the plaintiffs appellants moved the district court for a complete stay of its injunction, the Board requested only a partial stay of the district court's order, agreeing to comply fully with the order insofar as it prohibited the assignment of pupils to the jurisdiction's magnet schools on the basis of race, and requesting only that it be given until 2001-2002 to remove racial considerations from its system-wide assignment of students. Indeed, the Board requested the extra year with respect to the system-wide aspect of the district court's order because it plans to open four new schools during 2001-2002, and thus could minimize the total disruption by implementing the district court's order and introducing its new schools in the same year.

6

Although the plaintiffs appellants moved in this court for a complete stay of the district court's injunction, the Board requested of us <u>only</u> the partial stay that it had requested of the district court. The panel of our court, however, granted a complete stay of the district court's injunction <u>and</u> indefinitely pending further order.

There are three aspects of the panel's stay decision that are significant insofar as the present motion for initial <u>en banc</u> consideration is concerned. First, the panel granted the stay in part on the reasoning that nine months was an insufficient amount of time for the School Board to implement what the panel described as the "mammoth changes mandated by the [district court's] injunction." Stay Order at 4. Second, although the panel ordered expedited briefing and argument, it did not schedule argument until June -- some six months from the date of <u>its</u> stay order. And third, the panel concluded that it is likely that the School Board and the plaintiffs appellants will prevail on the actual merits of their challenge to the district court's injunction.*

_____

*The panel's discussion of the merits of the challenge comprises three sentences. Stay Order at 5. In the first sentence, which Judge Wilkinson omits to quote, the panel recited that "[w]e next consider the likelihood that CMS and the <u>Swann</u> plaintiffs will prevail on the merits." In the third sentence, the panel states its conclusion that "CMS and the Swann plaintiffs have met this element," a conclusion that it said it had reached "[a]fter examination of the parties' memoranda and the relevant case law." <u>Id</u>. Then in the conclusion to its entire opinion, the panel states that, "[i]n sum, the balance of hardships, <u>likelihood of success on appeal</u>, and the public interest favor staying the injunction." <u>Id</u>. at 6 (emphasis added).

In the second sentence, the panel said that the party moving for the stay "need only show grave or serious questions for litigation." <u>Id</u>. Even assuming that the panel intended, by articulating the "likelihood of success" test in this manner, to raise and answer a question different from "likelihood of success on the merits" -- contrary to what it stated -- the only reasonable way to understand this question is as requiring that the plaintiffs raise a "grave" or "serious" question <u>as to whether the district court's injunction was in error</u>. Thus, even if (despite its contrary statements) the panel concluded only that such a grave question had been raised, it necessarily reached a preliminary conclusion that the plaintiffs likely will succeed on the merits.

7

Because the full court has today denied the plaintiffs appellees' motion for en banc consideration, the appeal of the district court's injunction will be argued, at the earliest, this coming June.

One can never predict with any confidence the amount of time that will elapse between the argument of an appeal and the disposition of that appeal by a panel of this court. However, the legal issues presented by this appeal are quite important and the factual record is extensive, constituting, as it does, the culmination of a litigation that spans some thirty-five years. Under these circumstances, it would not be unreasonable at all to expect that a considered opinion by the panel on the important questions raised could take as many as six months, if not longer, especially given that the first three months of deliberation time will arrive during the summer months when, with family responsibilities, vacations, law clerk turnover, etc., the preparation of opinions invariably proceeds at a more irregular pace than during the non-summer months. And such an expectation presupposes that the panel would be unanimous in its disposition. If there is a dissent, then, obviously, several months more might reasonably be added to the

_____

I am at a loss to understand why Judge Wilkinson would so strain to suggest that the panel did not conclude, as it said it did, that the School Board and the plaintiffs appellants are likely to succeed on the merits of their challenge to the district court's injunction. He implies, for example, that it is my personal opinion alone that the panel so concluded. See ante at 3. And he characterizes the panel's stay order as making "only the briefest and most fleeting reference" to its conclusion that a likelihood of success on the merits had been proven, as if to suggest that the panel's short, clearly-stated conclusion of law is not a conclusion of law at all because it was clear and brief. Id. If Judge Wilkinson believes that the panel did not conclude as it stated or that its conclusion is of no legal import because of its brevity, notwithstanding the panel's statement that it had reached its conclusion "[a]fter examination of the parties' memoranda and the relevant case law," then he should forthrightly so state, and then explain his reasons for that conclusion. But not even he ultimately denies that the panel did so conclude. And more importantly, not one member of the panel that entered the stay (or one other member of the court as a whole for that matter) writes to agree with Judge Wilkinson's curiously extra-legal suggestion that the panel really did not mean what it stated in its stay order.

8

opinion's preparation time, to which might be added even additional time for the majority's response to the dissent and to any concerns raised by non-panel members.

Thus, it would not be unreasonable to expect a final panel decision in this case no sooner than approximately March or April of 2001, a year from now. At that time, the case would be ripe for the full court's consideration of a petition for rehearing en banc, should the losing parties choose to avail themselves of the option under rule and statute to seek en banc review of the panel decision.

Our panel, as noted, in staying the district court's injunction concluded that the Board and the plaintiffs appellants are likely to succeed on the merits of their challenge to the district court's injunction. A stay by this court is just that; it is not a final disposition of the underlying merits of the dispute. And a panel is always free to come to any conclusion it deems appropriate when the case is thereafter finally briefed, argued, and deliberated upon. Nonetheless, where, as here, the panel stays the district court's injunction in part specifically on the ground that the movant is likely to prevail on the merits of the dispute, not only the movant, but also the public, is entitled to the presumption that the movant will ultimately prevail in the case. Here, that would mean that the panel, presumptively only but presumptively no less, will invalidate the district court's dissolution of the thirty-five-year-long injunction to which the Board has been subject and invalidate that court's negative injunction that the Board is not henceforth to bus or base student assignments on racial considerations.

If, consistent with its preliminary conclusion on the motion for stay, the panel does ultimately conclude that the long-standing injunction to the Board should continue and that the Board is free to continue to bus and assign its students on the basis of race, then presumably the plaintiffs appellees will move this court for en banc consideration, as they have already done at this stage of the appeal. If they do so on the grounds inter alia that upholding the Board's race-based assignment of students to magnet schools is inconsistent with this court's recent decisions in Tuttle v. Arlington County, 195 F.3d 698 (4th Cir. 1999), and Eisenberg v. Montgomery County, 197 F.3d 123 (4th Cir. 1999), then the threshold criteria of our rules for en banc review will be satisfied and full court consideration will be

9

authorized. Those criteria would likewise be satisfied if the panel ultimately concludes, differently, that the district court's dissolution of the long-standing decree and its negative injunction to the Board should be sustained.

Regardless of the panel decision, one cannot possibly predict whether this court would agree to hear the case en banc, any more than one can predict the amount of time that might elapse between the oral argument on appeal and the panel's final disposition. However, under our rules, the losing party would have fourteen days in which to seek rehearing en banc and the prevailing party ten days in which to respond. Because the federal government is a participant in this case, it might be permitted to file its brief even later, as we and all courts customarily allow a longer response time for the federal government due to the vagaries of official authorization.

Should the court then decide to hear the case en banc following the panel's decision some further not insignificant amount of time will pass before the case is actually argued before the en banc court. For example, typically there is a two- or three-month interim period between the court's order of en banc consideration and the argument itself before the full court. Thus, if the panel decision is released in or about March or April of next year, and the court does decide to hear the case en banc, it would be reasonable to assume that that en banc argument would not occur until, at the soonest, June of 2001, and, most likely September 2001, absent a special session of court.

Upon the grant of a motion to rehear a case en banc, the court could, by rule, act upon the panel's stay of the district court's injunction. In other words, if the panel had left its stay in place, it would, by rule, be possible for the court to lift the stay pending en banc consideration of the case. However, I, for one, would not look favorably upon a motion to lift a stay at that time. At that point, it will be contended that preservation of the status quo counsels against any lifting of the stay pending our own further review of the case. A carefully considered panel decision is presumptively correct, and no other intervening circumstance would exist to suggest that the stay should not continue. Moreover, at that time, the beginning of the 2001-2002 academic year would be less than three months away, if not actually underway. (It would be less than nine months away even if the panel

10

decision is released in December 2000, rather than in March or April, 2001, because this court would not be in a position to grant rehearing en banc until January or February, 2001). Given that our panel has determined that nine months is insufficient time within which for the Board to prepare for an implementation of the district court's decision, it could fairly be argued that nothing would be served and much would be disserved by lifting the stay with so little time before the beginning of the new academic year. This argument would have all the more force were the academic year in fact already underway, as is possible.

In another case, it might fairly be assumed that the Board will be proceeding throughout with the development of plans that would bring the school system into compliance immediately in the event that such is ultimately ordered by this court. However, given that the panel of our court concluded that the Board and the plaintiffs appellants are likely to prevail in the case, I think that this otherwise normal assumption would be in error. In fact, I would think that the Board would be subject to criticism were it to expend funds in the development of contingency plans, even as only to the magnet school assignments, given this court's order that the Board is likely to prevail in its defense of the school system's existing plan for the bussing and assignment of students.

Once the case was argued en banc, because there is no reason to believe that the en banc court's opinions could be prepared in any shorter time than the panel's opinions -- and in fact every reason to believe that it might take longer given the statistically greater likelihood of multiple writings -- it would not be unreasonable to expect that a final en banc opinion would not be rendered before March or June of 2002, the middle if not end of the 2001-2002 academic year. Of course, even if the court affirmed the district court's dissolution and negative injunction at that time and no further proceedings were had, the district court's decision could not even possibly be implemented until the 2002-2003 academic year was well underway. And given the lead time necessary for implementation and our reluctance to order implementation during a school year, it could well not be ordered implemented until the 2003-2004 academic year. Of course, the losing party could well choose to seek certiorari in the Supreme

11

Court of the United States, which would even further delay any ordered implementation.

Therefore, because of the court's decision today to deny the plaintiffs appellees' request for initial hearing en banc, which I acknowledge is the ordinary course (at least in most cases), it would not be unreasonable at all to expect any implementation of the district court's injunction to be delayed until, at the earliest, the 2002-2003 academic year and most likely the 2003-2004 academic year -- a full three and one half years from today and almost four years from entry of the stay of the district court's judgment by the panel of our court. Even if the reasonable expectation is off a month or two here or there, because of the panel's conclusion that nine months is insufficient to implement the district court's injunction, then implementation would still not be possible until 2003-2004. And implementation in any year after 2001-2002 would not take account of the Board's concern that students will face significant disruptions in multiple years.

I understand that ordinarily a case is first heard by a panel of the court. But I doubt that anyone would argue that this is the ordinary case, and this court certainly has not previously treated it as ordinary. I believe that a case that calls the organization of an entire school system into question is not the ordinary case. Unlike private corporations or businesses that can be expected to implement our decisions and orders with reasonable dispatch, school systems, as institutions of local government, cannot be expected to respond instantly to our orders. If the school system is to be run locally and not by this court, then there must be time during which the community can participate in the assignment plans of its more than 100,000 students, and time during which the community can allocate the budgetary resources necessary to finance the endeavor. School systems also face the restraints of the academic year calendar, which further limit flexibility in responding to court orders. This is why the panel was rightly concerned about the timetable for implementation and that we will likewise be so concerned in the future about ordering significant changes during the middle of a school year or even shortly before a school year begins.

I have no opinion on even the preliminary question decided by the panel of whether the plaintiffs appellants are likely to succeed on the

merits of their challenge, and I certainly have no opinion on the fundamental questions presented by the underlying appeal. It does seem to me, however, that, because of the indisputably important issues raised, this court is obliged to resolve them as quickly as practically possible.

I respect Judge Wilkinson's profession of "commitment to the orderly and customary procedures of this court," ante at 2. However, I am as unconvinced by his impassioned plea for procedural regularity now, as the public, and certainly these parties, will be. Our court has with some frequency considered cases en banc initially, as contemplated and authorized by statute, see 28 U.S.C. § 46(c), and Federal Rule of Appellate Procedure 35, and, to my knowledge, Judge Wilkinson has never previously expressed the view that he does today that such is inappropriate. Indeed, as the parties themselves point out, the five prior published opinions in Swann v. Charlotte-Mecklenburg Board of Education have all been initially decided by our court en banc. Thus, "observance of process" and "procedural regularity," see ante at 5, if anything, in this case counsel in favor of en banc review, and effectively operate to put the burden upon Judge Wilkinson to explain why we depart from our prior practice in this litigation today.

Nor am I at all tempted to a different conclusion because of Judge Wilkinson's mischievous insinuation that to vote for initial en banc hearing in this case is to bare to public view a belief "that certain judges invariably resolve certain cases in certain ways," ante at 4; see also id. ("I am certain that all of us would be reluctant to prejudge how any of our colleagues on the court will adjudicate a case."). A vote to hear this case en banc no more (and no less) bespeaks this belief than does a vote to deny hearing en banc . Neither vote is to say anything about one's views of the results likely to be reached by the panel members. But if one is to indulge in the mischievous inferences that Judge Wilkinson does, then the public and the parties should conclude from Judge Wilkinson's opinion that he agrees with the panel that the School Board and the plaintiff appellants are likely to succeed on the merits of their challenge to the district court's judgment and that he votes to deny the motion for en banc consideration because he shares that view, not for any reason of procedural regularity.

However, as I say, Judge Wilkinson's insinuation is inapt in any event, unless one believes that the public and the parties may not and

13

should not accept at face value the court's order. Here, three of our colleagues concluded after a month and a half of careful deliberation on this sensitive case, that the School Board and the plaintiffs appellants are likely to succeed on the merits of their challenge, and they committed this considered view to written opinion. Thus, this is not at all the case that Judge Wilkinson needs for his insinuation. Here, by virtue of the court's own carefully considered opinion, the public and the parties are entitled as a matter of law to the presumption that the panel will invalidate the district court's order-- and not because of any illicit opinion about the individual panel members' politics, as Judge Wilkinson implies, but because of the judicial conclusion they have expressed in a written opinion for the court. And to deny this, as Judge Wilkinson would do, is simply to deny to positive law all meaning whatsoever.

I fully respect my colleagues' contrary judgment as to how to proceed procedurally to accomplish this needed expeditious consideration. But, as I explain, in the peculiar circumstances with which we are presented, where the panel has entered a stay considerably broader than that requested by the relevant School Board, the panel has concluded that the plaintiffs appellants are likely to prevail ultimately on the merits, and the panel has determined that even nine full months would be an insufficient amount of time for the Board to bring its school system into compliance with the district court's order even were that order to be sustained, the most responsible course is to have this case heard en banc in the first instance. Were we to hear this case in June, and en banc rather than by panel, I believe that a final decision of this court could be rendered to the parties and to the public in sufficient time for the Charlotte-Mecklenburg School Board to implement any ordered decision, whether that of the district court or a different one of this court, prior to commencement of the 2001-2002 academic year. Even this amount of delay is regrettable, but I do not see how it can be shortened consistent with our obligation to give the matter our most careful consideration. It seems to me that the parties and the community of Charlotte-Mecklenburg are entitled to this small additional effort by the court.

14