WILKINSON, Chief Judge,
concurring in the denial of an initial hearing en banc:
Before us is a preliminary procedural motion. I regret the need for this debate, but I think it is important to respond briefly to my brother’s dissenting statement. The question is simply whether this case should be heard initially by the Fourth Circuit en banc or by a three-judge panel. I am pleased that the court has decided to handle this case procedurally in the manner that we customarily handle our other, cases and refer it to a three-judge panel in the first instance. In voting to pursue that course, I express a commitment to the orderly and customary procedures of this court. I express no view whatsoever on the merits of the underlying action.
The Fourth Circuit refers cases initially to three-judge panels for good reason. Congress has decided that the basic unit for hearing an appeal from the judgment of the district court is a panel of three. See 28 U.S.C. § 46 (1994 & Supp. Ill 1997) (authorizing three-judge panels as the ordinary manner of proceeding for courts of appeals). Panel decisions refine, narrow, and focus issues before the court. In the vast majority of cases, panel decisions are the end of the matter. Panel decisions hold out the prospect of finality and repose every bit as much as en banc decisions do. Quite often the work of the panel renders an en banc decision unnecessary.
In cases too numerous to mention, we have rejected the request of litigants for an initial hearing en banc. An en banc proceeding has proven no guarantee of a brief or clean resolution of all the issues in a case. Just as at the Supreme Court level, a court of nine or more (in our case eleven) has the potential for producing splintered decisions. That potential is magnified when there has been no prior panel consideration of a case. Hearing the *855 case for the first time en bane would be like the Supreme Court bypassing the winnowing function of the court of appeals, which it routinely refuses to do.
No one can say at this point whether or not en banc review will occur. My dissenting brother urges - that we bypass the three-judge panel altogether because that panel previously ruled on a stay motion in this case. In doing so, he states his opinion that the appellants and the public are “entitled to the presumption that the [appellants] will ultimately prevail” before the hearing panel. He also announces his belief that “the panel, presumptively only but presumptively no less, will invalidate ” the district court’s dissolution of the desegregation decree and the district court’s injunction. My dissenting colleague thus seems to say that the three-judge panel’s disposition is all but foreordained and that we should remove the case from its hands instanter.
With all respect for my fine colleague, I believe this would be an inappropriate course of action. The stay order made only the briefest and most fleeting reference to the merits. It is clear from the order that the panel was predominantly concerned with the balance of hardships involved in this case. The panel stated at the outset of its analysis that “[irreparable harm to the party seeking the stay and harm to the opponent of the stay are the most important factors” in deciding whether to grant the stay motion. The panel stated that, having concluded that the balance of hardships favored the appellants, the burden of showing likelihood of success on the merits correspondingly diminished and the appellants “need only show grave or serious questions for litigation.” Without any elaboration of the merits, the panel then concluded that this element had been met.
Regardless of one’s view of the stay order, it does not afford a basis for taking the decision out of the panel’s hands. I am certain that all of us would be reluctant to prejudge how any of our colleagues on the court will adjudicate a case. We have long urged that the public resist a predetermined view of the judicial function — the notion that certain judges invariably resolve certain cases in certain ways. If we wish the public to resist this view of us, we must surely first resist this view of ourselves.
The panel in this ease has not had the benefit of briefing or oral argument. The judges have not .been able to discuss among themselves the insights that briefing and argument invariably provide. They have not been able to craft an opinion and receive the benefit of their colleagues’ views upon the same. In short, the panel has not been able to do any of the things that make judging a truly deliberative act. I sincerely doubt that the panel knows at this point what the outcome of its deliberations will be. ' But I am prepared to say that, whatever the outcome, it will represent the conscientious and dedicated efforts of three esteemed judges.
I am aware that it is desirable to resolve all litigation as promptly as possible. School desegregation cases in particular exact a heavy toll upon a community, as parents and students, teachers and administrators all desire a stable environment in which the primary business of education can move forward. My brother Luttig makes the good point that indeterminacy is in no one’s best interest. Legal procedures do, of course, provide for flexibility and expedition — but not when expedition would sacrifice the orderly course of judicial deliberation and when the consequences of bypassing our customary procedures are uncertain in their own right.
My dissenting colleague posits all sorts of hypothetical scenarios concerning the subsequent timetable of events. These hypothetieals, however, rest on a long chain of assumptions which may or may not occur, and they fail to take account of the fact that our customary route of proceeding may turn out to be the more effi *856 cient. None of us really possesses the ability to look so far into the future when so many independent factors, including the choices of the litigants themselves, cannot be foretold. We should therefore not engage in so speculative an endeavor at this stage.
Early on, when we were a smaller court, we resolved a number of school desegregation cases initially en banc. However, this practice has long since ceased. Since 1975, every school desegregation/pupil assignment appeal in this circuit has been decided initially by a three-judge panel. See Wheeler v. Durham County Bd. of Educ., 521 F.2d 1136 (4th Cir.1975); Martin v. Charlotte-Mecklenburg Bd. of Educ., 626 F.2d 1165 (4th Cir.1980); Goldsboro City Bd. of Educ. v. Wayne County Bd. of Educ., 745 F.2d 324 (4th Cir.1984); Vaughns v. Board of Educ., 758 F.2d 983 (4th Cir.1985); Riddick v. School Bd., 784 F.2d 521 (4th Cir.1986); School Bd. v. Baliles, 829 F.2d 1308 (4th Cir.1987); United States v. Charleston County Sch. Dist., 960 F.2d 1227 (4th Cir.1992); Stone v. Prince George’s County Bd. of Educ., 977 F.2d 574, 1992 WL 238254 (4th Cir.1992) (unpublished table decision); Tuttle v. Arlington County Sch. Bd., 195 F.3d 698 (4th Cir.1999) (per curiam); Eisenberg v. Montgomery County Pub. Sch., 197 F.3d 123 (4th Cir.1999). There is no reason to disturb this practice of referring these cases to panels in the first instance.
This is a case that arouses keen interest. It is my belief that courts should respond to that circumstance in a calm, orderly, and deliberative fashion in accordance with the best traditions of the láw. Judicial orders warrant the utmost respect when they are perceived by the public to have been reached in the most regular and careful manner. This observance of process is, I think, fundamental to the rule of law, just as a legally sound decision on the merits is. Indeed, the one abets the other, and that argues for not attempting to resolve what is a sensitive case in a procedurally atypical way. I therefore concur in the denial of the petition for an initial en banc hearing.